UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NONI JAMIL STINSON,

        Petitioner,

v.                                     Case No. 3:20-cv-1202-BJD-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Noni Jamil Stinson, an inmate of the Florida penal system, initiated this action on September 14, 2020,[1] by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition; Doc. 1).[2] She is proceeding on an Amended Petition (Doc. 16) and Memorandum of Law and Argument in Support of Amended 28 USC 2254 Exception to Procedural Default Actual Innocence (Memorandum; Doc. 17). In the Amended Petition, Stinson challenges a 2013 state court (Duval County, Florida)

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and the Appendix, the Court will cite the document and document page numbers assigned by the Court's electronic docketing system.

judgment of conviction for manslaughter. She raises seven grounds for relief in the Amended Petition and Memorandum. <u>See</u> Amended Petition at 5-11; Memorandum at 7-25.[3] Respondents submitted a Response to Federal Habeas Corpus Petition (Response; Doc. 23). They also submitted an Appendix with Exhibits 1-47. <u>See</u> Doc. 23-1 through 23-47. Stinson filed a brief in reply (Reply; Doc. 26).

## II. Relevant Procedural History

On August 31, 2006, the State of Florida charged Petitioner by information in Case No. 2006-CF-12588 with murder in the second degree. (Doc. 23-2 at 2). After a jury trial in August 2007, she was convicted as charged and sentenced to 35 years in prison. (Doc. 23-3 at 2-10). On March 13, 2009, the First District Court of Appeal (First DCA) reversed and remanded for a new trial because the standard jury instruction on the lesser included offense of manslaughter by act erroneously included an element that the defendant intentionally cause the death of the victim. <u>Stinson v. State</u>, 69 So. 3d 291 (2009); (Doc. 23-11).

---

[3] As do Respondents, the Court references the grounds as stated in the Memorandum as the Amended Petition does not include all of the grounds and is less complete. <u>See</u> Response at 15 n.11.

2

The State of Florida later filed an amended information charging Petitioner with murder in the second degree in connection with the shooting death of her husband on August 21, 2006. (Doc. 23-15 at 61-62). The court conducted a jury trial commencing on August 20, 2013. (Doc. 23-19); (Doc. 23-20); (Doc. 23-21); (Doc. 23-22). The jury returned a verdict of guilty as to the lesser-included offense of manslaughter. (Doc. 23-15 at 171-72); (Doc. 23-22 at 44). Through counsel, Petitioner filed a Motion for New Trial. (Doc. 23-15 at 173-74). The trial court denied the motion. Id. at 187. On October 1, 2013, the trial court sentenced Petitioner to thirty years in prison. (Doc. 23-3 at 20-101); (Doc. 23-15 at 190-95); (Doc. 23-16 at 16-97).

Petitioner appealed, (Doc. 23-16 at 4), raising two issues: (1) the trial court's justifiable use of deadly force jury instruction amounted to fundamental error because the instruction deprived Appellant of her "Stand Your Ground" defense; and (2) prosecutorial misconduct in closing argument deprived Ms. Stinson of a fair trial. (Doc. 23-23 at 3). Additional briefing followed. (Doc. 23-23 at 40-54); (Doc. 23-24). On September 5, 2014, the First DCA per curiam affirmed Petitioner's conviction and sentence. (Doc. 23-25 at 2). The mandate issued on September 23, 2014. Id. at 4.

Petitioner filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on September 2, 2015. (Doc 23-28 at 7-26).[4] She filed an amended motion for postconviction relief on May 23, 2016. Id. at 27-46. The state filed a response. Id. at 52-58; (Doc. 23-29 at 1-6). The court granted and scheduled an evidentiary hearing on grounds 3 and 4 of the initial motion and grounds 2, 4, 5 and 6 of the amended motion. (Doc. 23-29 at 7-12). The court conducted an evidentiary hearing commencing on March 27, 2019. (Doc. 23-42 at 11-359). Ann Fennell and Beth Sammons represented Petitioner. Id. Afterwards, Petitioner, through counsel, provided the court with a Memorandum in Support of Motion for Post-conviction Relief. (Doc. 23-40 at 40-66). The state also submitted arguments. (Doc. 23-43 at 5-19). On June 25, 2019, the trial court entered an order denying Petitioner's motions for postconviction relief. (Doc. 23-40 at 67-83). In its order, the court set forth the applicable law regarding postconviction claims of ineffective assistance of counsel, citing Strickland v. Washington, 466 U.S. 668 (1984). (Doc. 23-40 at 68-69). The court attached portions of the record to its order. Id. at 84-115.

---

[4] In reciting the procedural history, the Court identifies the date of Petitioner's filings giving her the benefit of the mailbox rule.

Petitioner filed a notice of appeal. Id. at 116-17. She filed a pro se brief. (Doc. 23-44). The State filed an answer brief. (Doc. 23-45). Petitioner filed a reply brief. (Doc. 23-46). On August 31, 2020, the First DCA affirmed per curiam the trial court's decision without a written opinion. (Doc. 23-47 at 2-3). The mandate issued on September 29, 2020. Id. at 4.

### III. One-Year Limitations Period

Respondents concede the Petition was timely filed. Response at 6. This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y,</u>

Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented

7

in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v.</u>

8

> Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192
> L.Ed.2d 356 (2015). Whatever that "precise
> relationship" may be, "'a state-court factual
> determination is not unreasonable merely because the
> federal habeas court would have reached a different
> conclusion in the first instance.'" Titlow, 571 U.S. at --
> -, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290,
> 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential

review under § 2254(d) generally is limited to the record that was before the

state court that adjudicated the claim on the merits. See Cullen v. Pinholster,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an

examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." Burt v. Titlow,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were

adjudicated on the merits in the state courts, they must be evaluated under 28

U.S.C. § 2254(d).

9

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan

10

> v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

> claims from being heard is not without exceptions. A
> prisoner may obtain federal review of a defaulted
> claim by showing cause for the default and prejudice
> from a violation of federal law. See Coleman, 501 U.S.,
> at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may

be excused under certain circumstances. Notwithstanding that a claim has

been procedurally defaulted, a federal court may still consider the claim if a

state habeas petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d

1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that prevented
> [him] from raising the claim and which cannot be
> fairly attributable to his own conduct." McCoy v.
> Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier,
> 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may

receive consideration on the merits of a procedurally defaulted claim if the

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

12

petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

13

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland</u>, 466 U.S. at 687).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a

trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that

15

> determination was unreasonable — a substantially
> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.
Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the
deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds
another layer of deference — this one to a state court's decision — when we are
considering whether to grant federal habeas relief from a state court's
decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,
"[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.
Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Petitioner alleges she received the ineffective assistance
of counsel and was denied a fair trial with respect to counsel's failure to retain
an expert on battered spouse syndrome and have the expert testify at trial.
Memorandum at 7-9. In ground five of her amended postconviction motion,

Petitioner alleged a comparable claim of ineffective assistance of counsel. The postconviction court granted an evidentiary hearing on this ground.

Petitioner's ineffectiveness claim is without merit. The postconviction court found defense counsel retained two experts to vet a possible battered spouse defense. (Doc. 23-40 at 76). The court continued its examination of the evidence presented at the evidentiary hearing. Id. For example, the court noted that Mr. Gropper testified that he reviewed Dr. Stephen Bloomfield's report but determined it was not favorable to the defense. Id. Finding the opinion weak, Mr. Gropper testified that he sought the opinion of a second expert, Dr. Larry Neidigh. Id. The court recognized that Dr. Neidigh did not perceive battered spouse syndrome as a viable defense because Petitioner was not trapped in a relationship that she could not escape, and Dr. Neidigh found Petitioner reported no symptoms consisted with Post Traumatic Stress Disorder. Id. at 77.

The court also considered the fact that, thereafter, the state had Petitioner examined by an expert, Dr. Meadows, who also did not provide a favorable report. Id. at 77. The court was persuaded by Mr. Gropper's testimony that he decided to present an informal battered spouse syndrome defense, avoiding a battle of the experts, something he perceived to be

17

detrimental to the defense. <u>Id</u>. The court was also persuaded by the testimony of co-counsel for the defense, Janet Abel, who agreed that Dr. Meadows' report would not be good for the defense as he opined that battered spouse syndrome was not relevant and the Petitioner's actions appeared to be motivated by anger and the defense expert opinions were comparatively not very strong. <u>Id</u>.

The court also found compelling the testimony of Dr. Meadows, who attested that Petitioner showed good adaptation in the time leading up to the offense, including continuing her advanced education in psychology, taking care of her children, and adaptation in her occupational functioning, and never sought any form of mental health treatment. <u>Id</u>. at 78. Of additional import to the court, Dr. Meadows found significant Petitioner's actions after the shooting, including deliberately attempting to cover-up her actions by lying to the dispatcher and the police, as well as her past history of manipulative, impulsive, and deceitful behavior. <u>Id</u>. at 79.

Although Petitioner testified that she wanted her mother, Joan Darby, to testify as well as her daughter, Nila Butler, Mr. Gropper attested that he feared the impeachment of these witnesses as Petitioner did not tell her mother about the abuse or any attack the night of the incident and Ms. Butler's testimony was not particularly helpful and was open to impeachment on cross-

examination. Id. at 79-80. Indeed, Mr. Gropper noted that both witnesses were called during the first trial, and Petitioner was convicted of murder in the second degree. Id. at 80. As such, the defense strategy was discussed, with Petitioner agreeing not to do the trial the same way as the first one. Id. Mr. Gropper concluded that the best approach was to present an informal battered spouse syndrome defense relying solely on Petitioner's testimony. Id. This strategy proved more successful in that Petitioner was convicted of a lesser-included offense, manslaughter, even though she shot her husband, hid the gun, and lied to the police. Id.

The postconviction court found trial counsels' testimony more credible than that of Petitioner. Id. at 81. This Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by" this Court. Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (internal quotation marks omitted) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

On August 31, 2020, the First DCA affirmed, and AEDPA deference is due. (Doc. 23-47 at 2-3). Thus, to the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After

19

a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. The record shows the following. Counsel retained two experts to investigate and consider battered spouse syndrome. The experts evaluated Petitioner and issued reports. Defense counsels' decision not to use these witnesses at trial was within the wide range of professionally competent assistance. Counsel elected to use an informal battered spouse syndrome defense, claim self-defense, and rely solely on Petitioner's testimony to convince the jury that her actions did not constitute murder. Based on the verdict, the defense strategy was successful. Indeed, Petitioner was convicted of manslaughter even though she hid the gun, lied to the police, and admitted she was angry with the victim.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice. The Court is not

convinced that trial counsel performed deficiently under these circumstances. Even assuming arguendo deficient performance by counsel, Petitioner has not shown any resulting prejudice. Petitioner has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had performed differently. For all of the foregoing reasons, Petitioner is not entitled to habeas relief on the claim in Ground One.

## B. Ground Two

As Ground Two, Petitioner alleges she received the ineffective assistance of counsel based on counsel's "failure to challenge conflicting report and failure to engage expert witness to support defense." Memorandum at 10. In ground two of her amended postconviction motion, Petitioner alleged a similar claim of ineffective assistance of counsel. The postconviction court granted an evidentiary hearing on this ground.

The postconviction court addressed this ground finding:

> During the hearing, Jason Gropper testified that he did not retain a medical examiner expert in the case. It was explained during the hearing that the State notified the Defense that Dr. Giles would change his testimony shortly before he testified. Both Jason Gropper and Janet Abel testified that they were going to use the change in the medical examiner's testimony to impeach his credibility. Jason Gropper testified that he made a strategic decision to focus on his client's

21

version of events and that in his opinion another
expert would not assist the Defense.

. . . .

       In the instant case, Dr. Giles['] testimony
changed slightly from the first trial. Mr. Gropper made
a tactical decision to use the change in testimony to
impeach the medical examiner's credibility.
Consistently, Mr. Gropper testified that he did not
want to make the Defendant's case a "battle of the
experts." The Court finds that Mr. Gropper's decision
under the facts of this case, not to retain an expert is
not outside the broad range of reasonably competent
performance under prevailing professional standards,
and thus, Trial Counsel was not ineffective in failing
to retain a medical expert.

(Doc. 23-40 at 71-72). The postconviction court also found Petitioner failed to

satisfy the prejudice prong of <u>Strickland</u>. The First DCA per curiam affirmed

the denial of relief without a written opinion. (Doc. 23-47 at 2-3).

    To the extent that the First DCA decided the claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's adjudication

of this claim was not contrary to clearly established federal law, did not involve

an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. Her ineffectiveness claim is without merit because she has shown neither deficient performance nor resulting prejudice. Accordingly, she is not entitled to federal habeas relief on the claim in Ground Two.

Notably, defense counsel did not find out that Dr. Giles was changing his testimony until shortly before trial. (Doc. 23-20 at 58-59). Ms. Abel asked that the state be required to maker Dr. Giles available in the morning prior to trial. Id. at 58. Ms. Abel advised the court that Dr. Giles was now going to testify that in his expert opinion the shot that went into the back of the head of the victim was the first shot and the shot to the neck was the second shot. Id. Responding to defense counsel's request, the trial court directed that the state make Dr. Giles available at 9:30 the following morning for the purpose of consulting with Ms. Able prior to the commencement of the trial at 11:00. Id. at 61. Mr. Gropper confirmed that defense counsel would not be taking Dr. Giles deposition. Id.

When Dr. Giles testified, Ms. Abel thoroughly cross-examined him. Id. at 177. Specifically, Ms. Abel referred to Dr. Giles change in testimony to impeach his credibility. Id. at 178-82.  Through effective cross-examination, Dr. Giles admitted that his testimony concerning the first and second shot would be inconsistent with the two shots being pow, pow, one immediately after the other. Id. at 185. Without retaining a defense medical expert, defense counsel effectively impeached Dr. Giles' credibility, avoiding a battle of the experts, something which Mr. Gropper wanted to avoid in presenting the defense. The attorneys prepared for Dr. Giles testimony by interviewing him the morning of his testimony, preparation within the broad range of reasonably competent performance under prevailing professional standards. Petitioner has not met the prejudice prong as the approach chosen by counsel certainly proved effective. Counsel's performance was not deficient nor does Petitioner meet the prejudice prong of Strickland. As such, Petitioner is not entitled to relief on Ground Two.

## C. Ground Three

Next, the Court addresses Ground Three. Memorandum at 13. Petitioner contends trial counsel was ineffective when counsel failed to object to the trial court's jury instruction on the use of deadly force as being confusing. Id.

Petitioner complains the instruction is internally inconsistent because the court instructed she had no duty to retreat and had a right to stand her ground, but then the court instructed that she had to attempt to avoid difficulty after she armed herself.

The court, without objection from the defense, instructed:

> In deciding whether the defendant was justified in the use of deadly force, you must judge her by the circumstances by which she was surrounded at the time the force was used. The danger facing the defendant need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.

> If the defendant was not engaged in an unlawful activity and was attacked in any place she had a right to be, she had no duty to retreat and had a right to stand her ground and meet force with force, including deadly force if she reasonably believed that it was necessary to do so to prevent death or great bodily harm to herself or another or to prevent the commission of a forcible felony.

> If you find that the defendant who because of threats or prior difficulties with Solomon Stinson had reasonable grounds to believe that she was in danger of death or great bodily harm at the hands of Solomon Stinson, then the defendant had the right to arm herself. **However, the defendant cannot justify**

25

> **the use of deadly force, if after arming herself she renewed her difficulty with Solomon Stinson when she could have avoided the difficulty, although as previously explained, if the defendant was not engaged in any unlawful activity and was attacked in any place where she had a right to be, she had [n]o duty to retreat.**

(Doc. 23-22 at 7-9) (emphasis added).

Of note, on direct appeal, Petitioner raised the following claim: "[t]he trial court's justifiable use of deadly force jury instruction amounted to fundamental error because the instruction deprived Appellant of her 'Stand Your Ground' defense." (Doc. 23-23 at 24). The First DCA summarily affirmed the trial court. (Doc. 23-25). Therefore, the state court did not find fundamental error.

When Petitioner raised the claim as one of ineffective assistance of counsel, it too was rejected by the state courts. Petitioner exhausted this claim by presenting it in ground three of the original motion for postconviction relief and ground four of the amended motion and on appeal. Petitioner argued the instruction was fundamentally flawed, confusing, and contained internally inconsistent statements that negated the application to the defense presented at trial. More directly, Petitioner argued it conflicted with the "Stand Your Ground" defense.

26

At the evidentiary hearing, Mr. Gropper testified that because the first trial was reversed on a jury instruction issue, everyone was hyper-sensitive to the jury instructions. (Doc. 23-42 at 168). Mr. Gropper said they all made sure they used acceptable standard instructions, and any other needed instructions. Id. at 168-69. He found no reason to object to the instruction regarding the justifiable use of deadly force. Id. at 169. He also deemed beneficial that the instruction was given concerning the victim's reputation of being a violent and dangerous person even though the state objected to that particular instruction. Id. at 170-71. Overall, Mr. Gropper did not consider objecting to the deadly force jury instruction, a standard jury instruction. Id. at 209-11.

The postconviction court rejected Petitioner's claim of ineffective assistance of counsel:

> As stated earlier, the Defendant raised the same jury instruction issue, as one of fundamental error on direct appeal. The Defendant relied on Floyd v. State, 151 So.3d 452 (Fla. 1st DCA 2014) to support her position that the jury instructions were misleading and confusing. However, in 2016, the Florida Supreme Court quashed the decision in Floyd and held that standard instruction 3.6(f) does not provide conflicting instructions concerning the duty to retreat. State v. Floyd, 186 So.3d 1018 (Fla. 2016). Specifically, the instructions are not confusing, misleading, or contradictory with regard to the duty to retreat when there is a question of fact as to who was the initial aggressor.

27

. . . .

> When the jury instructions on justifiable use of deadly force are taken together, the instructions correctly indicate that a person cannot use deadly force unless they are faced with an applicable danger which they cannot otherwise avoid, short of making a retreat. When the instructions are read as a whole and not parsed apart into component pieces, the jury was correctly apprised of the applicable law through the standard jury instructions. Therefore, the jury instructions were merely addressing both sides of a factual distinction to be made by the jury. If a defendant is not the initial aggressor, she has no duty to retreat, but if she is the initial aggressor, then she has a duty to retreat. This does not negate the "stand your ground" law but merely explains it to the jury. The "stand your ground" law does not give a citizen the right to use deadly force at whim.

(Doc. 23-40 at 74-75). The court continued, finding Petitioner failed to satisfy the prejudice prong of Strickland. (Doc. 23-40 at 75-76). The First DCA affirmed. (Doc. 23-47 at 2-3).

To the extent that the First DCA decided the claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication

---

[8] See Wilson, 138 S. Ct. at 1192.

of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, trial counsel "cannot be deemed deficient for failing to object to standard jury instructions that have not been invalidated by the Florida Supreme Court." Hartley v. Sec'y, Fla. Dep't of Corr., No. 1:18-cv-5-AW-GRJ, 2021 WL 1608831, at *8 (N.D. Fla. Feb. 22, 2021), report and recommendation adopted by 2021 WL 1087285, at *1 (N.D. Fla. Mar. 22, 2021) ("But the instruction was a standard instruction, and it faithfully tracked the language of the then-applicable Stand-Your-Ground law. Counsel did not perform deficiently by not objecting. And the state court's rejection of this claim was not an unreasonable application of Strickland.").[9] Here, the trial court delivered the Florida Supreme Court's then-applicable standard jury

---

[9] It was not until May 5, 2016, that the Florida Supreme Court set forth new language that would become effective when the opinion became final. In re Standard Jury Instructions in Criminal Cases-Report, 191 So. 3d 411 (Mem.) (Fla. 2016). Counsel cannot be held ineffective for failure to anticipate changes in the law. Winston v. United States, No. 8:12-cv-719-T-27MAP, 2013 WL 6198858, at *3 (M.D. Fla. Nov. 27, 2013) (not reported in F.Supp.2d) (citing United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001); Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994); Thompson v. Wainwright, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986)).

instruction on the justifiable use of deadly force. <u>See</u> Florida Standard Jury Instruction (Criminal) 3.6(f). The Florida Supreme Court upheld the instruction. <u>State v. Floyd</u>, 186 So. 3d 1013, 1020-21 (Fla. 2016).

After the trial, on direct appeal, Petitioner raised the jury instruction issue as fundamental error and the First DCA affirmed per curiam. Failure to object to the instruction under these circumstances is not ineffective assistance of counsel.

In the alternative, Petitioner is essentially complaining about a mere error of state law. As such, "[i]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions." <u>Verne v. Jones</u>, No. 3:15cv-001-LC/CAS, 2017 WL 1190386, at *11 (N.D. Fla. March 10, 2017) (not reported in F. Supp.), <u>report and recommendation adopted by</u> 2017 WL 1196440 (N.D. Fla. Mar. 29, 2017) (not reported in F. Supp.). As noted by Respondents, "because whether a jury instruction is so flawed as to constitute fundamental error is a question of state law, not federal law, this ground should be denied." Response at 23. Upon review, Ground Three is essentially grounded on issues of state law.

Petitioner's counsel was not ineffective for failure to object to an instruction that correctly stated Florida law. <u>See</u> <u>Reyes v. Fla. Dep't of Corr.</u>,

No. 22-CV-60567-RUIZ/STRAUSS, 2023 WL 3178563, at *14 (S.D. Fla. Apr. 11, 2023), report and recommendation adopted by 2023 WL 3172551, at *3 (S.D Fla. May 1, 2023) (in Florida, standard instructions are presumed correct; therefore, counsel did not perform deficiently by failing to object to a valid Florida instruction); Floyd v. Fla. Dep't of Corr., No. 3:15cv361-MCR/CAS, 2017 WL 4229054, at *9 (N.D. Fla. July 7, 2017) (not reported in F. Supp.) (finding the petitioner failed to demonstrate that trial counsel was deficient in failing to object to the standard jury instruction on justifiable use of force approved by the Florida Supreme Court), report and recommendation adopted by 2017 WL 4226141 (N.D. Fla. Sept. 22, 2017) (not reported in F. Supp.).

Based on all of the above, the Court concludes that Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel raised in Ground Three. Nevertheless, in an abundance of caution, the Court will grant a certificate of appealability as to Petitioner's claim of ineffective assistance of counsel for failure to object to the jury instructions on justifiable use of deadly force and her failure to satisfy the deficient performance and prejudice prongs of Strickland. See Tramel v. Sec'y, Fla. Dep't of Corr., No. 3:19-cv-1071-MMH-MCR, 2022 WL 2818111, at *19 (M.D. Fla. July 19, 2022), certificate of appealability granted, Tramel v. Sec'y Dep't of Corr., et al., Case

22-12801 (Doc. 11-2) (11th Cir. Sept. 5 2023) ("Whether the district court erred in holding that Tramel's arguments in Ground 9 were foreclosed by the Florida Supreme Court's holding in <u>State v. Floyd</u>, 186 So. 3d 1013 (Fla. 2016)?").

### D. Ground Four

In her fourth ground, Petitioner raises a claim of ineffective assistance of counsel for failure to challenge prosecutorial misconduct. Memorandum at 16. She complained that the State attacked her by asserting she was lying, stating she had committed murder, and contending she was motivated by anger and humiliation. <u>Id.</u> Petitioner noted that trial counsel made appropriate objections, but the court failed to caution the State. <u>Id.</u> Petitioner raised a comparable contention in ground one of the motion for postconviction relief and ground one of her amended motion for postconviction relief and appealing the decision to the First DCA.

To the extent that the First DCA decided the claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication

---

[10] <u>See</u> <u>Wilson</u>, 138 S. Ct. at 1192.

of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. Her ineffectiveness claim is without merit because she has shown neither deficient performance nor resulting prejudice. Accordingly, she is not entitled to federal habeas relief on the claim in Ground Four.

Although Petitioner brought a claim of prosecutorial misconduct on direct appeal, the First DCA affirmed the Petitioner's conviction. Petitioner claims defense counsel performed deficiently by failing to object to improper comments in rebuttal closing argument. The postconviction court rejected this contention finding counsel did object to the comment on the Petitioner's theory of defense. (Doc. 23-40 at 70). As such, there was no deficient performance. With regard to the remaining comments, the court found there was no prosecutorial misconduct as the prosecutor's argument was based on "a reasonable inference from the evidence in closing argument." Id. Of import,

there was evidence that Petitioner was angry about the condom being found in the truck, that she did receive a sexually transmitted disease from her husband, and after finding out, that she shot her husband and lied to the police about the shooting. Id. Additionally, there was evidence that the victim was shot in the back of the head, and he was involved in drugs. Id. The court reasonably found that the prosecutor's arguments constituted a fair and reasonable inference from the evidence and were made in response to the defense's closing arguments. Id. The postconviction court held:

> Trial Counsel cannot be found ineffective for failing to object to comments by the prosecutors that are facts in evidence and a reasonable inference drawn from the evidence. The Defendant has failed to establish how the arguments are impermissible as (1) prosecutorial misconduct and (2) how the failure to object would have had a reasonable probability that the outcome would have been different.

Id.

Based on a review of the record, the Court concludes that the prosecutor was commenting on the evidence; therefore, defense counsel was not ineffective for failure to object. Regardless, Petitioner has not shown prejudice. Immediately prior to the closing argument, the trial court instructed the jury that what the lawyers says is not evidence. (Doc. 23-21 at 116). After the closing argument, the court instructed the jury that it was their duty to decide

34

what evidence and testimony was reliable. (Doc. 23-22 at 11). After reviewing the comments in context, along with the entirety of the evidence presented at trial, the Court finds that Ground Four is due to be denied.

### E. Ground Five

As Ground Five, Petitioner claims denial of her constitutional rights to a fair trial when the trial court denied her motion for judgment of acquittal. Memorandum at 19. She alleged comparable claims in ground two of the motion for postconviction relief and ground three of the amended motion for postconviction relief. The postconviction court summarily rejected this ground finding, "[c]laims of trial court error are not cognizable in a rule 3.850 motion." (Doc. 23-40 at 71). In both ground two of the motion for postconviction relief and ground three of the amended motion for postconviction relief Petitioner raised claims of trial court error. (Doc. 23-28 at 14, 32-33). Petitioner did not rely on the United States Constitution or its parts and made no mention of Jackson v. Virginia, 443 U.S. 307 (1979) or its progeny to contend insufficiency of the evidence in violation of the United States Constitution.

The Court finds Petitioner did not properly exhaust the claim raised in Ground Five. Indeed, this ground should have been raised on direct appeal. As noted by Respondents, "this ground should be denied or dismissed as

procedurally defaulted." Response at 26 (footnote omitted). Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. As Petitioner is procedurally barred from raising Ground Five, she must demonstrate cause and prejudice. Petitioner has failed to establish cause and prejudice or that a fundamental miscarriage of justice will result if the Court fails to address the claim on its merits. The Court further finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence. As such, the Court finds that the claim in Ground Five is procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Petitioner's procedural default bars this Court's review of Ground Five.

Alternatively, this claim is without merit. Mr. Gropper moved for judgment of acquittal on the charge of murder in the second degree. (Doc. 23-20 at 186-87). The court denied the motion. Id. at 187. The court also denied a renewed motion for judgment of acquittal. (Doc. 23-21 at 101). After hearing all of the evidence, the jury found Petitioner guilty of the lesser-included offense of manslaughter despite her contention that she acted in self-defense. (Doc. 23-15 at 171-72); (Doc. 23-22 at 44). After reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found

Petitioner committed manslaughter. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir.) (given that evidence may give some support to the defendant's theory of innocence, that is not sufficient to warrant habeas relief). Upon review, the evidence at trial was sufficient to convict Petitioner of this manslaughter offense and there was no denial of due process of law. As such, Ground Five is due to be denied.

## F. Ground Six

In Ground Six, Petitioner claims her counsel's failure to object to Judge Adrian Soud's emotional breakdown amounted to ineffective assistance of counsel. Memorandum at 21. Petitioner's contention is that during the sentencing hearing, Judge Soud became teary or emotional during the testimony of the victim's minor child. Id. Petitioner raised similar claims in ground four of the motion for postconviction relief and ground six of the amended motion for postconviction relief. (Doc. 23-28 at 17, 40-41). She argued that she did not receive a fair and impartial sentencing hearing due to the trial judge's personal bias and prejudice based on the judge's loss of objectivity. Id. at 41. She urged the court to find that counsel had a duty to object or move for a mistrial based on Judge Soud's emotional state. Id. Petitioner complained that counsel's failure to object to the Judge Soud's inappropriate behavior

37

prejudiced the defense as Judge Soud was emotionally biased, resulting in a maximum sentence of thirty years. Id.

The circuit court granted an evidentiary hearing on this claim of ineffective assistance of counsel. Petitioner withdrew this ground at the evidentiary hearing and did not present evidence to support the claim. The record shows that postconviction counsel announced at the evidentiary hearing that the defense was abandoning the "emotional breakdown ground." (Doc. 23-42 at 354-55). Petitioner did not tell the court otherwise. In the Memorandum in Support of Motion for Post-conviction Relief, there was a notice of abandonment of this ground, noting the claim was not addressed at the evidentiary hearing. (Doc. 23-40 at 45). The court, in denying this ground, found that Petitioner withdrew the ground at the evidentiary hearing, did not present evidence to support her contention, failed to meet her burden, and has no entitlement to relief. (Doc. 23-40 at 76). The First DCA per curiam affirmed on August 31, 2020. (Doc. 23-47).

To the extent that the First DCA decided the claim on the merits,[11] the Court will address the claim in accordance with the deferential standard for

---

[11] See Wilson, 138 S. Ct. at 1192.

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. Her ineffectiveness claim is without merit because she has shown neither deficient performance nor resulting prejudice. Accordingly, she is not entitled to federal habeas relief on the claim in Ground Six.

Assuming arguendo Judge Soud teared up during the testimony of the victim's minor child, this expression of sadness was in response to the child's testimony concerning the loss of his father, not based on the jury's determination that Petitioner was responsible for that loss, as that determination had already been made at trial by the jury. See Response at 27. There is nothing in the record supporting the contention that the court lost impartiality, neutrality, or objectivity with regard to sentencing.

The record shows that the victim's minor son testified at sentencing. (Doc. 23-3 at 73). He prepared and read a statement for the court:

> In dealing with my father's death has been difficult. And prior to him being killed, I had the opportunity to see him when I wanted to, to call him when I wanted to and spend time with him. This makes me feel sad to not see him go to my basketball games or for him not to pick me up from school or spend time with him any other day. I feel really sad to lose him because I never get to see him again. I miss him dearly.
>
> Me and him have the same birthday. We didn't spend time with each other on our birthdays. I cannot explain how the pain that goes through – that goes through me since his death. He was a good man and always loved his family. He will always be a piece of me. Our birthdays are the same. I will miss my daddy always. Thank you, [J. S.].

Id. at 74.

Later, the court rejected the Petitioner's request for a downward departure, finding a downward departure inappropriate under the law. Id. at 95. The court did comment on the emotional nature of the sentencing proceeding:

> I also wanted to say for purposes of the record that at times the sentencing hearing this afternoon has been, very understandably and rightly, emotional. Emotional from parents of the victim and the defendant, emotional from siblings and other loved

40

ones and certainly children. And I will have more to say about that in just a moment.

And while, understandably, the hearing has been emotional given the nature of this case and all that surrounds it, the Court must state for the record that this Court is not vested with the luxury of emotion. This Court must in every case, including this one, consider the facts presented to it. Consider the very skilled and seasoned argument of three lawyers who were here this afternoon, all of whom are greatly respected by the Court. And to consider the facts and the law and the evidence and then, as best the Court can, render a fair and lawful decision. That at times is very difficult.

Id. at 95-96. The court continued:

Ms. Stinson, you've been previously adjudicated guilty of manslaughter, that based upon a jury of your peers finding you guilty of that lesser-included crime, this Court does not take issue with their verdict, that that is their prerogative under law and that is the jury's responsibility. This Court readily accepts the jury's verdict, does not question it whatsoever.

Evaluating, as courts must do in every case, not only the crime with which you've been found guilty, but, number one, the intention of your conduct within the crime that has been committed as determined to be manslaughter and, number two, the consequences of your crime.

The consequence can be no more grave. It can be no more severe. It can be no more enduring than the death of a human being. And that is what is before the Court, the death of a human being. The Court does not live in a vacuum. The Court well recognizes, as

41

recognized by Mr. Stinson, Sr.'s, mother and family members, that he may have been involved in conduct involving illegal drugs or something of that sort, but that does not remove from him the God-given designation of a human being. His past criminal conduct, his past episodes of violence perhaps against you, none of that is lost on this Court. The Court is ever familiar and aware of those circumstances, but on the night Mr. Stinson, Sr. lost his life there is no evidence before the Court that he was acting in a manner that puts you in imminent danger. That was presented to the jury and the jury in its verdict rejected that argument. So be it.

Id. at 96-97.

The court then distinguished this case from other manslaughter cases, where perhaps a punch was thrown, and the matter escalated or there was conduct that resulted in unexpected, devastating consequences. Id. at 97. The court found, "this goes to the end of the more aggravated aspects of manslaughter of the conduct in which the jury determined you engaged was grave and heinous in scope." Id. at 98. The court also referenced the surviving victims, the children who either testified or provided a letter, noting "their loss is a tragic consequence of your choice." Id. at 98. Of import, the court acknowledged defense counsel's request that the court consider a release date that would allow Petitioner to meaningfully invest in the lives of her children.

Id. After noting that the jury did not find Petitioner acted in self-defense, the court sentenced Petitioner to thirty years in prison.[12] Id. at 99.

Alternatively, Petitioner failed to exhaust this ground due to abandonment. As such, the claim is unexhausted and procedurally defaulted. Petitioner has failed to show cause and prejudice or that failure to address the claim will result in the fundamental miscarriage of justice.

Finally, Petitioner attempts to raise a claim of ineffective assistance of postconviction counsel for abandoning this ground in the state courts. Memorandum at 21. As there is no merit to the underlying claim that trial counsel was ineffective for failure to object or move for mistrial, it does not satisfy any exception. As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in Martinez, 566 U.S. at 17, is inapplicable and does not excuse the procedural default of this claim. See Clark v. Comm. Ala. Dep't of Corr., 988 F.3d 1326, 1330 (11th Cir. 2021) ("Martinez is of no help because [Petitioner] has not presented a 'substantial claim' that his trial counsel rendered ineffective assistance[.]"), cert. denied, 142 S. Ct. 1134 (2022).

---

[12] The Criminal Punishment Code Scoresheet shows a sentence computation range of 127.8 months to thirty years. (Doc. 23-3 at 19-20). The sentence imposed by the state court fell within that range.

Petitioner has failed to establish cause for the procedural default of her claim raised in ground six and the Court finds Petitioner's default is not excused.

## G. Ground Seven

In her seventh and final ground, Petitioner raises a claim that the state court deprived her of an unredacted copy of the record on appeal of the denial of her postconviction motion, depriving her of her constitutional rights.[13] The First DCA directed that the clerk of the circuit court provide the First DCA with an unredacted copy of the record on appeal. (Doc. 23-27 at 4). The circuit court complied. Thus, the First DCA has before it an unredacted copy of the record on appeal. Id. at 6-7. However, the First DCA directed that the Clerk "maintain confidentiality of the unredacted record in accordance with Florida Rule of Judicial Administration 2.420[,]" noting the record contains confidential information. (Doc. 23-27 at 4). Of note, the record included three forensic psychological examinations of Petitioner and other documents considered to be sensitive and confidential.

Petitioner is complaining that the state postconviction court or clerk of that court constitutionally erred when either the court or the clerk deprived

---

[13] The state circuit court clerks are more extensively redacting information. See Fla. Stat. § 119.071 (General exemptions from inspection or copying of public records). See Response at 28 n.27.

Petitioner an unredacted copy of the record on appeal of the denial of the postconviction motion. In doing so, she challenges a defect in the state postconviction process. Thus, her assertions involve state law and procedure not cognizable on federal habeas corpus review.

The Eleventh Circuit "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted). "The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment - i.e., the conviction itself – and thus habeas relief is not an appropriate remedy." Id. (citations omitted); Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam); Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) ("Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the record in any way undermines the validity of petitioner's conviction. Because [the] claim[] goes to issues unrelated to the cause of petitioner's detention, it does not state a basis for habeas relief") (citations omitted). As such, Petitioner is not entitled to federal habeas relief on the claim in Ground Seven.

45

The First DCA ordered and obtained an unredacted copy of the postconviction record. Thus, the reviewing state court undertook its review based on a complete record. As such, Petitioner is not entitled to habeas relief on this ground.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition (Doc. 16) with Memorandum (Doc. 17) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Amended Petition with Memorandum and dismissing this case with prejudice.

3.      If Petitioner appeals the denial of the Amended Petition with Memorandum,[14] the Court **grants a certificate of appealability on Ground Three** (as to the Court's denial of Petitioner's claim of ineffective assistance of counsel for failure to object to the jury instructions on justifiable

---

[14] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability, except with respect to Ground Three.

use of deadly force and the Court's determination that Petitioner failed to satisfy the deficient performance and prejudice prongs of <u>Strickland</u> as to Ground Three) and **denies a certificate of appealability in all other respects**. Because the Court has determined that a certificate of appealability is warranted as to Ground Three, **Petitioner may proceed on appeal as a pauper.**

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of October, 2023.

BRIAN J. DAVIS
United States District Judge

sa 10/12
c:
Noni Jamil Stinson
Counsel of Record

47